```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3     HONORABLE JEAN P. ROSENBLUTH, MAGISTRATE JUDGE PRESIDING

 4   UNITED STATES OF AMERICA,          )
                                        )
 5                                      )
                                        )
 6                      Plaintiff,      )
                                        )
 7                                      )
                                        )
 8         Vs.                          )   No. CV13-1320-JAK
                                        )
 9                                      )
                                        )
10   WAHAK KATSCHADOR,                  )
                                        )
11                                      )
                                        )
12                      Defendant.      )
                                        )
13   _____

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                   EXTRADITION HEARING

18                  SANTA ANA, CALIFORNIA

19                 THURSDAY, MAY 16, 2013

20

21

22             MIRIAM V. BAIRD, CSR 11893
           OFFICIAL U.S. DISTRICT COURT REPORTER
23            255 East Temple Street, # 181-K
              LOS ANGELES, CALIFORNIA 90012
24                   (213) 894-2853
                   MVB11893@AOL.COM
25
```

1                    **A P P E A R A N C E S**

2

3      **IN BEHALF OF THE PLAINTIFF,**     U.S. DEPARTMENT OF JUSTICE
       **UNITED STATES OF AMERICA:**       U.S. ATTORNEY'S OFFICE
4                                          BY:  DONNA FORD
                                           312 NORTH SPRING STREET
5                                          12TH FLOOR
                                           LOS ANGELES, CALIFORNIA 90012
6

7

8

9      **IN BEHALF OF THE DEFENDANT,**     FEDERAL PUBLIC DEFENDER
       **WAHAK KATSCHADOR:**               BY:  ALYSSA D. Bell
                                           321 EAST SECOND Street
10                                         LOS ANGELES, CA 90012

11

12

13

14     **ALSO APPEARING:**
       LEVON DOUNAMALIAN, ARMENIAN LANGUAGE INTERPRETER
15

16

17

18

19

20

21

22

23

24

25

1          SANTA ANA, CALIFORNIA; THURSDAY, MAY 16, 2013; 1100

2                              ---

3

4          THE COURT:  Good morning.

5          THE CLERK:  Calling case CV13-1320-JAK(JPR), United

6    States vs. Wahak Katschador.

7          Counsel, please state your appearance for the

8    record.

9          MS. FORD:  Good morning, Your Honor.

10         Donna Ford the Government.

11         THE COURT:  Good morning.

12         MS. BELL:  Good morning.  Alyssa Bell on behalf of

13   Vahagn Khachatryan, the person named herein as Wahak

14   Katschador who is present in custody assisted by the Armenian

15   interpreter.

16         THE COURT:  Thank you.  Just right upfront, because

17   there's obviously his identity is contested.  I probably

18   would mispronounce both names.  I'm just going to refer to

19   him as the defendant if that's all right with both parties.

20         MS. FORD:  Yes, Your Honor.

21         MS. BELL:  That's fine, Your Honor.

22         THE COURT:  All right.  One thing I thought I would

23   upfront ask, Ms. Ford, about is that in your memorandum, you

24   state that -- on Page 22, *the names are identical.  The*

25   *person appearing in these proceedings is Wahak Katschador.*

1  *See minutes of initial appearance.  Defendant states true*

2  *name is as charged.*

3        But I don't think that's correct.  I have a copy of

4  the minutes.  It says -- it's a little odd, but it says,

5  *defendant states true name is* -- and it says, *Vahagn*

6  *Khachatryan, but the box where it says, is as charged* was

7  checked initially, but then crossed off.  Then the other box

8  is checked.  It says, *Vahagn Khachatryan.*

9        Do you know what is going on there?

10        MS. FORD:  I don't recall what I looked at.  I can

11  look at it and brief it tomorrow and file something with the

12  Court, if the Court would like.

13        THE COURT:  Well, let me ask Mr. Roper to show both

14  parties this.  This is from the court's docket.

15        MS. FORD:  I don't have the docket with me,

16  Your Honor.  Is there another entry in the docket?

17        THE COURT:  Not that I saw.  I mean, that's the

18  minute order for the initial appearance.

19        As I noted, it does look like something -- that it

20  was first checked that it is, *as charged,* but then that box

21  is crossed off and something else is written in.  I wasn't

22  the judge presiding over that.  So I don't know exactly what

23  happened.

24        Ms. Bell?

25        MS. BELL:  Your Honor, I was present at that time.

```
 1    To my knowledge, we certainly made no admission that
 2    Mr. Khachatryan is, in fact, Mr. Katschador.  Certainly
 3    intended to make no such admission.  It's always difficult in
 4    the magistrate court at the initial appearance when there is
 5    contested identity simply for the purposes of processing the
 6    paperwork.  My intention was to make clear that
 7    Mr. Khachatryan from the very first moment he came before the
 8    Court represented his identity as Vahagn Khachatryan and no
 9    other person.
10         THE COURT:  Well, Ms. Ford, you were there as well;
11    correct?
12         MS. FORD:  Yes.
13         THE COURT:  Has she seen the document?
14         MS. FORD:  Yes, I see that was crossed out.  I can
15    withdraw that for now, Your Honor, and supplement it tomorrow
16    if the Court would like.
17         THE COURT:  Why don't we see how the proceedings
18    go.  For now I'm going to assume that from the beginning he
19    has contested his name.
20         The Court reporter would like a spelling of both
21    names.  So I'm going to ask -- Ms. Ford, why don't you spell
22    the last name for the fugitive Watschador {sic} -- I'm sorry.
23    I knew I would mess it up.
24         MS. FORD:  I say Katschador.
25         THE COURT:  Can you spell it for the Court
```

1    reporter.

2            MS. FORD:  Yes, Your Honor.  W-A-H-A-K, last name

3    K-A-T-S-C-H-A-D-O-R.

4            THE COURT:  Ms. Bell, can you spell the first and

5    last name of the person who is sitting next to you.

6            MS. BELL:  Yes, Your Honor.  First name is Vahagn

7    V-A-H-A-G-N.  Last name Khachatryan, K-H-A-C-H-A-T-R-Y-A-N.

8            THE COURT:  Thank you.  To the court reporter, when

9    I mispronounce both of those, just spell them the way they've

10   indicated.

11           Now that we have those preliminary matters out of

12   the way.  Let me ask the defendant if he understands -- it is

13   an Armenian translation being provided to him?

14           MS. BELL:  That's correct, Your Honor.

15           THE COURT:  Have you understood the Armenian

16   translation provided to you so far today?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Thank you.

19           We are here to determine whether the defendant is

20   extraditable to the Republic of Germany on both the pending

21   robbery charge and the robbery charge that has already been

22   adjudicated and resulted in a judgment of conviction.

23           Let me ask, Ms. Bell, it's my understanding that

24   the only challenge you're making is to identity; in other

25   words, probable cause; is that correct?

1          MS. BELL:  That's correct, Your Honor.

2          THE COURT:  So you're conceding that the other

3    requirements for extradition have been met?

4          MS. BELL:  Yes.  That's correct.

5          THE COURT:  Does the Government move for the

6    admission of the documents compromising the formal request

7    for extradition?

8          MS. FORD:  Yes, Your Honor.

9          THE COURT:  Is there any objection?

10          MS. BELL:  No objection.

11          THE COURT:  The documents are admitted.

12          I take it from the parties' filings that neither

13    side has any other evidence to present; is that correct?

14          MS. BELL:  Yes, Your Honor.

15          MS. FORD:  That's correct, Your Honor.

16          THE COURT:  All right.

17          So does the defendant wish to be heard further

18    concerning extradition, the identity aspect?

19          MS. BELL:  Yes, I would like to be heard.

20          Your court clerk, I should say, has also indicated

21    to me that you may wish to hear from Mr. Khachatryan

22    directly.  I have informed him of the fact that you may wish

23    to hear from him.

24          THE COURT:  No.  I think I'm all right.  Let me

25    just -- I'm 99 percent certain that I have this correct, but

1    let me confirm -- obviously, since I do have to find his

2    identity, I want to make sure that I am comparing the

3    relevant photographs that I have in front of me.  So my

4    understanding is that this -- the pages are a little hard to

5    read.

6              The photographs beginning on Page 30 of the

7    Government's civil filing of February 27th -- these

8    photographs -- are the photographs that were in possession of

9    the German authorities.  So these were the photographs that

10   were taken at the time of the alleged crimes in Germany; is

11   that correct?

12             MS. FORD:  Yes, Your Honor.

13             THE COURT:  Obviously, you know, I'm going to be

14   looking at him to compare this.  I have already compared

15   these photographs with the photographs that are in the record

16   from the California Driver's license and then the Armenian

17   passport.  So I have looked at all of those already.

18             So, Ms. Bell, let me hear from you now concerning

19   identity.

20             MS. BELL:  Thank you, Your Honor.  We would submit

21   at the outset that the Government has failed to meet its

22   showing of probable cause that Mr. Katschador and

23   Mr. Khachatryan are one and the same person.  I -- a few

24   points I'd like to highlight for the Court.  The first is

25   that the Government makes much of the fact that the stayed

1    judgment is, in fact, a final conviction and judgment.  But

2    that does not relieve the Government of its burden of

3    probable cause to show Mr. Khachatryan's identity.  That

4    would go to an underlying evidentiary showing which we

5    established at the outset we do not contest.

6            Second, as to Exhibit H which was attached to

7    the Government's reply brief, this was Mr. Hemmerle was the

8    detective or agent or investigator otherwise involved in the

9    Luneburg robberies not the stayed robbery.  So it was the

10   robbery associated with the warrant rather than with the

11   conviction.

12           THE COURT:  I'm sorry to interrupt you, but didn't

13   they submit also some sort of -- there's Hemmerle as to the

14   one.  Then didn't they submit something from another

15   detective as to the other?  I thought they did.

16           MS. BELL:  That is not my understanding.  Although

17   I could have misunderstood the record, Your Honor.

18           THE COURT:  So here it says -- we've got Hemmerle.

19   *Today Detective Sergeant Wulf Hemmerle was presented with*

20   *photographs of Katschador, the person shown on the attached*

21   *photographs and the person DS Hemmerle apprehended in*

22   *connection are definitely one and the same.*

23           Then I have something two pages later where it

24   says, *Today Chief Superintendent Helmut Kamradt was presented*

25   *with photographs of Wahak Katschador.  He conducted the*

1    *initial interrogation in connection with the aggravated*

2    *robbery committed on June 19th, 2005 in Sven.*

3              Those are two different --

4              MS. BELL:  Your Honor, could you tell me which

5    bates number --

6              THE COURT:  I'm sorry.  Everything -- it's quite

7    confusing.  I'm looking at the reply of the United States.

8              MS. BELL:  Okay.

9              THE COURT:  On Bates Stamp 276 is where it

10   discusses the I.D. by Hemmerle.  On 278, it is by Kamradt,

11   Helmut Kamradt.  At first I thought the same thing you did,

12   and then I looked a little more closely.

13             MS. BELL:  If Your Honor would draw your attention

14   to the upper right-hand corner it does say, *Luneburg* of Bates

15   278.  My understanding reading these various documents is

16   that, in fact, these photographs were shown to various people

17   in Luneburg.

18             THE COURT:  You're saying -- it's two different

19   people who have made an I.D., but only as to the one crime?

20             MS. BELL:  That's my understanding, Your Honor.

21             THE COURT:  That was not how I read it.

22             What is your understanding, Ms. Ford?

23             MS. FORD:  My understanding was that they were two

24   separate -- from the two separate incidents as well,

25   Your Honor.  I can look at this more closely while we're

```
 1   talking.

 2          THE COURT:  I'm sorry to interrupt you.  Maybe

 3   Ms. Ford can find us something that resolves that one way or

 4   the other.

 5          MS. BELL:  Wonderful.  Thank you, Your Honor.

 6          If I can draw Your Honor's attention to Bates 268,

 7   I believe it is, the Government referenced Bates 269 and 270

 8   in its reply brief.  The affidavit or the memo which is

 9   attached and signed which relates to the identification of

10   these photographs says that this person was shown photographs

11   of Wahak Katschador.  In reading the rest of this filling, it

12   appears that all the persons were shown photos identified as

13   Wahak Katschador.  That suggests to me that they were not

14   asked to make an identification of a photograph of

15   Khachatryan named as such.  That their identification would,

16   therefore, be vulnerable because it was unduly suggestive.

17          I would also submit that if the Government -- the

18   fact that the Government felt the need to submit a

19   supplemental investigation in Germany as to Mr. Khachatryan's

20   identity does show the variable vulnerability in its

21   argument.

22          We would submit that Mr. Katschador and

23   Mr. Khachatryan have different life stories.  Mr. Katschador

24   grew up in Iraq.  He is an Iraqi national.  There is no

25   dispute that Mr. Khachatryan who is sitting next to me today
```

 1    is an Armenian national.  He has been -- he's being assisted

 2    this morning by the Armenian language interpreter.  He has

 3    submitted to me that he does not understand German.

 4          The burden ultimately rests with the Government.

 5    The Government has provided us with no explanation for this

 6    inconsistency.  I have done independent investigation on my

 7    own and have searched for prior passports, and have found no

 8    prior passports.  The passport of Mr. Khachatryan which I

 9    have attached in its entirety to the relator's opposition to

10    the Government's request for extradition does show one sole

11    trip out of Armenia to the United States.

12          THE COURT:  Right.  Although, obviously, if

13    somebody had procured a passport under false pretenses and

14    using it for the first time, it will only have that one trip.

15    I mean, I understand your point.  I also appreciate what

16    you're saying.  I absolutely agree that if the standard here

17    were beyond a reasonable doubt, I could not find beyond a

18    reasonable doubt, at least not right now, that this gentleman

19    is the gentleman who is wanted in Germany.  But the standard

20    here is probable cause, you know.

21          Let me ask you something concerning your filings.

22    The declaration from your investigator, it never says that

23    the investigator showed Mr. Osekyan photographs of this

24    person -- that the German authorities had included in the

25    filings and asked, is this your relative.  So that sort of

1    renders --

2         I mean, I appreciate that there is somebody named

3    Vahagn Khachatryan, you know, who perhaps grew up with

4    Mr. Osekyan, but, you know, I don't have any evidence that

5    his identity has not been appropriated.  You know --

6         MS. BELL:  I understand that, Your Honor.  This has

7    been a very difficult case to investigate because there is a

8    true culture of fear in Armenia.  Fear of official power and

9    authority.  That has translated even to those scant

10   connections that Mr. Khachatryan has here in the

11   United States.  It's been very difficult to present something

12   more robust to the Court, such as a photo identification by

13   his cousin.

14        I would draw the Court's attention to his cousin's

15   representation that when he went to Armenia in 2006, that

16   Mr. Khachatryan's hands were worn in the way of only someone

17   who has spent many years working in the fields.

18        THE COURT:  I'm not sure I understand the relevance

19   of that.  Because he -- unless you want me to inspect his

20   hands.  Because Mr. Khachatryan came here -- the passport, I

21   think, it is early July of 2006.  So, you know, the -- you

22   know, I don't know what this person in Germany was doing.

23   Maybe he had cause to have rough hands, too.

24        Frankly, it is quite a coincidence that the German

25   suspect was supposed to show up in court on, I believe, it's

1   May 23rd, 2006, and basically a month later, your client is

2   immigrating to the United States, you know, after having

3   worked on a farm all his life.

4        You know, the timing is quite a coincidence, as

5   well, here.  All of the evidence other than the fingerprints

6   is really quite circumstantial, but it adds up.  The names

7   are similar even if they are not identical.  The birth dates

8   are one day off down to the year.  The appearance is

9   certainly similar.  Then you've got the fact that the one and

10  only trip this guy has made to the United States just

11  happened to be a month after, you know, somebody didn't show

12  up in Germany with a very similar name and birth date.

13       MS. BELL:  I understand, Your Honor.  I would

14  simply say that probable cause, although certainly a lesser

15  standard than reasonable doubt, is not a standard entirely

16  without teeth.  That it is up to the Court to make a

17  searching and a probing challenge to the evidence before

18  making a final decision.

19       THE COURT:  All right.

20       Let me ask you.  I know you have asked the Court to

21  find the fingerprint identification not persuasive based on a

22  general objection to fingerprint evidence and the way the

23  findings are made and the way the examinations are made, but

24  do you have any reason to believe that this particular

25  fingerprint identification is flawed in any way?

1           MS. BELL:  No, Your Honor.

2           THE COURT:  All right.  Thank you.

3           Anything further that you wanted to add?

4           MS. BELL:  No.  That's it, Your Honor.  Thank you.

5           THE COURT:  Thank you.

6           Ms. Ford?

7           MS. FORD:  So I compared the two detectives'

8    statements.  They are, in fact, referring to the two separate

9    crimes.  If you look at the first one, Detective Hemmerle, it

10   says that on -- keep in mind that in Europe they switch the

11   month and the day.  It says July 10th, 2005 pursuant to the

12   preceding robbery.  The July 10th, 2005 robbery was the

13   Luneburg robbery.  So he compared those photographs.  He was

14   the one who apprehended the defendant close to the scene of

15   the crime.  He looked at both sets of photographs.

16          THE COURT:  Right.

17          MS. FORD:  The other one, Chief Superintendant

18   Kamradt conducted the initial interrogation of Katschador

19   on --

20          THE COURT:  May 31st.

21          MS. FORD:  Right.  In connection with the robbery

22   committed on June 19th, 2005 in Sven.  That is with the

23   stayed robbery.

24          THE COURT:  That was --

25          MS. FORD:  That's separate.

1          THE COURT:  That was my understanding as well.  I

2    couldn't reconstruct in my head why I had that understanding,

3    so I appreciate that.

4          Ms. Bell, do you have anything to add to that?

5          MS. BELL:  No.  I think I was confused, Your Honor,

6    because of the Luneburg stamp on the document.  So I

7    appreciate that that is, in fact, what the evidence shows.

8    Thank you.

9          THE COURT:  Ms. Ford, do you have anything else to

10   add?

11         MS. FORD:  No, Your Honor.  I think the Court

12   touched on everything.

13         THE COURT:  All right.

14         Well, I certainly appreciate the arguments and the

15   evidence that Ms. Bell has presented.  I do agree with her,

16   as I stated, that this is not the most clear-cut case that

17   one could hope for and, certainly, there's, you know, if he

18   gets to Germany and he has arguments to be made that he's not

19   the right person, I assume that the standard there will be

20   more difficult to meet.  But here all I have to find is

21   probable cause to believe that the Vahagn Khachatryan

22   appearing before the Court is, in fact, Wahak Katschador

23   sought by the German Government pursuant to the warrants and

24   formal extradition papers.

25         I did get from the Government a proposed order.  I

1    appreciate that.  As will be spelled out more explicitly in

2    the Court's written findings, whether I adopt all or part of

3    that order, I make my finding that probable cause exists

4    based not only on the fingerprint evidence, which defense

5    counsel has a general objection to, but does not contest is

6    proper in this particular instance, but also the similarity

7    in appearance of the defendant with the photographs in the

8    record.  I have observed him here, both looking straight at

9    me and from the side.  He does appear to be very similar,

10   although certainly not identical necessarily to the

11   photographs in the papers, but I bear in mind that the

12   photographs in possession of the German authorities are

13   apparently six or seven years old.  That might account for

14   the difference.

15          There is also nearly the identical birthdate shared

16   by the two individuals.  The fact that the names are similar

17   even if not identical.  As I mentioned, the fact that the

18   defendant immigrated to the United States very shortly after

19   Mr. Katschador was summoned to appear in the German Court to

20   begin serving his sentence.

21          I find that all of that circumstantial evidence in

22   connection -- and as well, the detectives' identifications of

23   him based on looking at the photographs from -- of the

24   Glendale and California Driver license from the Glendale

25   arrest and saying that was the person that they had dealt

1    with in conjunction with these two crimes.

2         I do find that there is probable cause to believe

3    that these are the same two individuals, or that he is the

4    man sought in Germany.

5         I further find that all of the other requirements

6    for extradition have been met.  Therefore, the Court will

7    issue an order certifying extraditability.  The defendant is,

8    therefore, again, committed to the custody of the US Marshal

9    to be confined without bail until a surrender to the

10   Government of Germany can be accomplished.

11        My understanding is that the Court needs to send a

12   copy of the transcript to the Secretary of the State -- to

13   the Secretary of State, rather.  That transcript should

14   include the initial hearing date of -- Mr. Roper, was there

15   an initial hearing in this matter?

16        THE CLERK:  One moment.

17        THE COURT:  It should include both the initial

18   hearing date and today's hearing date.

19        MS. BELL:  Your Honor, I have that date if

20   necessary.  February 11th, 10:00 o'clock a.m. before Judge

21   Eick.

22        THE COURT:  We'll need a transcript of both

23   proceedings.  February 11th, 2013 and the one from today,

24   which is May 16th, 2013.

25        Is there any further?

1          MS. FORD:  No, Your Honor.

2          MS. BELL:  Your Honor, Mr. Khachatryan is very

3    concerned about how quickly he will be transferred to

4    Germany.  I think he would appreciate some statement on the

5    record about a forthwith transfer to German authorities.  My

6    understanding is that 60 days is the statutory outset date

7    for this date.

8          THE COURT:  Well, if it is, certainly if it doesn't

9    happen, then I imagine that we'll be hearing from you again.

10   Appropriately so.  I will say that he should be transported

11   forthwith, but I'm not going to say anything more specific

12   than that, because they have jobs to do that I don't

13   understand.

14         MS. BELL:  Thank you, Your Honor.  I appreciate

15   that.

16         THE COURT:  Certainly this does have to go -- my

17   understanding -- my word is not the last word.  It has to go

18   to the Secretary of State, and the Secretary of State has to

19   certify it.

20         MS. FORD:  Then they have to make the arrangements

21   between the two countries to transport the defendant.

22         THE COURT:  Right.  There's a lot of variables at

23   play.  I hope that it all happens forthwith.  Thank you.

24         MS. BELL:  Thank you, Your Honor.

25              (Proceedings concluded at 11:35 a.m.)

```
 1                        CERTIFICATE

 2    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

 3    TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

 4    THE ABOVE MATTER.

 5    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

 6    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

 7    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9    /s/ Miriam V. Baird              05/31/2013

10    MIRIAM V. BAIRD                       DATE
      OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT